UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Equal Employment Opportunity Commission, | Civil No. 11-mc-0019 (JNE/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| BNSF Railway Company, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the Court on May 2, 2011 for a hearing on the Equal Employment Opportunity Commission's Application for Order to Show Cause Why a Subpoena Should Not Be Enforced (Doc. No. 1). Nicholas J. Pladson appeared on behalf of the Equal Employment Opportunity Commission. Stephen F. Fink and Britt M. Gilbertson appeared on behalf of BNSF Railway Company. For the reasons stated below, the Court recommends that the subpoena not be enforced as presently worded, but that the subpoena be narrowed to names and medical information of all job applicants nationwide who were not hired as track laborers between January 1, 2007 and April 30, 2010.

I.  BACKGROUND

In early 2008, James Wells ("Wells") applied for a track laborer position with BNSF Railway Company ("BNSF"). Consistent with its typical hiring practice, BNSF extended a conditional offer of employment pending a background screen. These background screens include a physical examination, a background investigation, completion of a medical history

questionnaire, and an assessment by BNSF's medical officer. Failing any portion of the background screen results in a revocation of the conditional offer of employment.

Wells had suffered a prior work-related injury to his back, which was treated successfully through surgery. Wells disclosed his condition during the background screen, and an independent doctor found he had no functional limitations. Upon review, however, BNSF's medical officer concluded that Wells' prior condition presented a direct threat of future injury, and BNSF rescinded the conditional offer of employment.

Five days later, Wells filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that BNSF discriminated against him in violation of the Americans with Disabilities Act (ADA). The charge states that Wells applied for a track maintenance/labor position in the Minneapolis/St. Paul area, was interviewed for the position, and was told he would be hired upon completion of the medical examination. Although he passed all of the required tests, he continues, BNSF refused to hire him because of his previous medical condition.

In April 2009, the EEOC submitted a request for information to BNSF, asking for data about other applicants in the same region whose conditional offers of employment had been revoked during the same time period. BNSF provided some information but not personal identifiers or medical information, citing HIPAA concerns. After unsuccessfully attempting to resolve the dispute informally, the EEOC issued a subpoena for the applicant names and medical data. BNSF challenged the subpoena through administrative avenues, and the EEOC determined the subpoena was valid. BNSF then fully responded to the subpoena.

The information from BNSF showed that Wells and at least three other applicants were found physically able to perform the track laborer position, but their conditional offers of

employment were revoked after the assessment by BNSF's medical officer. The EEOC then expanded its request for information to track maintenance and laborer positions nationwide. In response, BNSF provided names and medical information for all applicants nationwide who were not hired as a track laborer from January 1, 2009 to April 30, 2010. From this information, the EEOC identified five more applicants who were physically able to perform the position but whose conditional offers of employment were revoked.

In addition to the applicant-specific information, the EEOC also sought a list of all positions requiring medical screening. BNSF responded that a medical examination was required for strenuous, safety-sensitive, outdoor positions "in Transportation (train service), Engineering (maintenance of way/track laborer, signal), Mechanical (carman, shop laborer), and Train Dispatcher." (Schmid Decl. Ex. 13.) This response triggered the EEOC's interest in how BNSF excluded applicants for other jobs who were physically able to perform the job but were not hired because of a perceived risk of aggravating a medical condition.

> Thus, on July 9, 2010, the EEOC issued the subpoena now at issue, requesting
>
> an electronic database[] identifying all individuals that were denied hire for a position requiring medical screening from January 1, 2007 to present, in any U.S. region, because they were not deemed medically qualified for the job. For each applicant, list name, last known home phone number and address, date of application, position applied to, location/geographic region of position, and reason for the failure to hire. Include the above information for all applicants that removed themselves from consideration after their application was flagged as needing additional medical information for review. Supply all documentation related to the above.

(Schmid Decl. Ex. 16.) BNSF filed a petition to revoke or modify the subpoena, which the EEOC denied. As a compromise, BNSF offered to produce nationwide data on applicants for track laborer positions from January 1, 2007 through April 30, 2010, but the EEOC insisted on full compliance. BNSF refused, and the EEOC filed the present application.

## II.   DISCUSSION

### A.   The EEOC's Authority to Investigate Unlawful Employment Practices

In fulfilling its duty to investigate an unlawful employment practice charge, the EEOC may issue subpoenas requesting "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a); *see also* 42 U.S.C. § 2000e-9. To obtain judicial enforcement of a subpoena after an employer objects to compliance, the EEOC must show that the charge is valid, that the requested material is relevant to the charge, and more generally, that the subpoena is not vague or issued for an improper purpose. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984). BNSF does not challenge the EEOC's authority to investigate Wells' charge, the validity of the charge, or the purpose or clarity of the subpoena. BNSF focuses its opposition on relevance.

As reflected in the statutory language of § 2000e-8(a), "the EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction,[] the EEOC is entitled to access only . . . evidence 'relevant to the charge under investigation.'" *Shell Oil*, 466 U.S. at 64. The function of the charge in a subpoena enforcement action is to set the parameters of relevance, and courts must take care not construe relevance so broadly that the language of the charge is rendered a nullity. *See id.* at 68, 69. But the requirement that the requested information be relevant "is not especially constraining," and courts have routinely granted the EEOC "access to virtually any material that might cast light on the allegations against the employer." *Id.* at 68-69.

4

B.     **The Positions of the Parties**

BNSF points out that Wells' charge contains no class-wide or pattern-and-practice allegations, no allegations concerning positions other than the track laborer position for which he applied, and no allegations that could be extended to any other job applicant. Because relevance must be measured against the language of the charge, BNSF argues, the EEOC has overstepped its investigative authority by requesting nationwide data on all applicants for jobs requiring medical screening.

On the other hand, the EEOC takes the position that it is "entitled to expand investigations to evaluate potential class violations even if these investigations go beyond the allegations raised in the initial charge." (BNSF Ex. 2; Doc. No. 14-2.) Citing language from a pre-*Shell Oil* case from the Fourth Circuit Court of Appeals, *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976), the EEOC views the charge as providing it with a "jurisdictional springboard" to investigate any potential discriminatory practice by the employer. *Id.* at 364 (citation omitted).

C.     **Collateral Estoppel**

BNSF urges the Court to find that the EEOC is collaterally estopped from seeking to enforce the subpoena at issue, based on a recent ruling in a similar case from the District of Colorado, *EEOC v. BNSF Railway Co.*, No. 1:10-cv-03008-JLK (D. Colo. filed Dec. 13, 2010).[1] There, the EEOC commenced an action against BNSF to enforce a subpoena issued in relation to two charges of disability discrimination made by individuals who were selected as conductor trainees, but whose offers were rescinded after BNSF's medical officer determined they were not

---

[1]     The Court may take judicial notice of records filed publicly in another court. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

medically or physically qualified for the position. *Id.* (Sienko Decl. Attachs. 1, 4, Dec. 13, 2010; Doc. Nos. 1-2, 1-5). The ensuing subpoena commanded BNSF to identify all computerized files containing electronic data on all personnel activities including job applicants, hiring, and terminations. *Id.* (Sienko Decl. Attach. 10; Doc. No. 1-11).

At oral argument on the EEOC's application to enforce the subpoena in the Colorado action, the EEOC referred to the two charges under investigation, "as well as three other charges from Kansas, Minnesota, and Wyoming [that] follow the same pattern." (BNSF Ex. 4 at 9.) The EEOC asked to "be allowed to go beyond the individual allegations of discrimination . . . and determine for ourselves whether or not BNSF, in fact, is engaged in a policy or pattern or practice of discriminating against the disabled by medically disqualifying them." (*Id.* at 13-14.) The court denied the EEOC's application for enforcement orally on the record, stating,

> The administrative subpoena is pervasive, and it seeks plenary discovery. There are no allegations of a pattern and practice. The demand for data on a nation-wide basis with two individual claims involving only applicants in Colorado is excessive. And while wide deference to administrative inquiries and investigations -- wide deference to the scope of the subpoenas is given, it does not transcend the gap between the pattern and practice investigation and the private claims that have been shown here. The show cause order is discharged, and BNSF's refusal to comply with the subpoena as issued is sustained.

(*Id.* at 18.) The EEOC appealed the order on March 22, 2011. *EEOC v. BNSF Railway Co.*, No. 1:10-cv-03008-JLK (D. Colo. notice of appeal filed Mar. 22, 2011), *appeal docketed*, No. 11-1121 (10th Cir. Mar. 23, 2011).

The doctrine of collateral estoppel precludes parties from relitigating an issue when: (1) the identical issue was adjudicated in a prior matter, (2) the earlier action resulted in a final judgment on the merits, (3) the parties are the same or were in privity with the prior parties, and (4) the party to be estopped had "a full and fair opportunity" to litigate the issue. *Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 966 (8th Cir. 2010) (quoting

*Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004)). The Court finds that the first element is not satisfied here. While the Colorado and Minnesota subpoenas seek overlapping information, the issues in the two cases are not identical. The Colorado subpoena requested BNSF's electronic files of all personnel activities including job applicants, hiring, and terminations. Here, the subpoena is narrower in scope, seeking the electronic files of all individuals who were not hired for positions requiring medical screening because they were not deemed medically qualified for the job. In addition, relevance in the Colorado action was measured according to the two charges brought to the EEOC there, whereas here, the EEOC argues relevance based only on the allegations in Wells' charge.

Even though the Colorado decision does not collaterally estop the EEOC from seeking to enforce the present subpoena, its persuasive value cannot be overlooked. Both subpoenas seek pervasive discovery extending far beyond the allegations of the charges, which do not so much as hint at a pattern or practice of discrimination. Furthermore, while the Colorado subpoena was issued in response to two charges made there, Wells' charge is the only charge prompting the investigation here.

### D.     Relevance

To assess whether the information requested is relevant to the charge under investigation, the Court begins by examining the nature of the charge. *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 654 (7th Cir. 2002). Here, Wells alleged that BNSF discriminated against him in violation of the ADA when it refused to hire him for a track maintenance/labor position in the Minneapolis/St. Paul area because of a previous medical condition. The information sought by the EEOC, however, goes far beyond these allegations. The request is not limited to similarly situated job applicants by position or by location. *See id*. Although the EEOC intones the "might

cast light" language from *Shell Oil*, it does not explain, for example, how information about a job applicant with diabetes for a dispatcher position in Chicago "might cast light" on a charge by a job applicant with a previous back condition for a track laborer position in Minneapolis. Adopting this expansive view of relevance would render null the statutory requirement that the investigation be relevant to the charge. *See United Air Lines, Inc.*, 287 F.3d at 654.

In *United Air Lines*, an employee filed a charge with the EEOC alleging that her employer discriminated based on national origin by not contributing to the French social security system for American employees living in France. *Id.* at 646. As part of its investigation, the EEOC subpoenaed information regarding every benefit provided to all employees who lived in France. *Id.* at 646-47. The Seventh Circuit held that the information was not relevant to the charge, because the charge contained no allegation of widespread discrimination.

> Nothing in the charge suggests systemic discrimination on the basis of national origin or sex with respect to life, health, disability and leave benefits. Allowing the EEOC to conduct such a broad investigation would require us to disregard the Congressional requirement that the investigation be based on the charge.

*Id.* at 655. The same is true here. Nothing in Wells' charge suggests systemic discrimination on the basis of disability, or even one other instance of disability discrimination.

Nonetheless, the EEOC argues that BNSF's background screening procedure expands the bounds of relevance to every job applicant nationwide who was denied hire due to the screening. The EEOC relies on *EEOC v. Kronos Inc.*, 620 F.3d 287 (3d Cir. 2010), for this proposition. In *Kronos*, the employer used a specially developed standardized test to assess the service and interpersonal skills of all job applicants for retail sales positions. *Id.* at 292. After one applicant was rejected in part because of the test results, she filed an unlawful employment practice charge with the EEOC, and the EEOC subpoenaed information about the employer's use of the test nationwide. *Id.* at 293-94. The court found that nationwide records could provide comparative

data and "useful context" for the charge under investigation and enforced the subpoena. *Id.* at 298.

*Kronos* is distinguishable from the case at hand primarily because it involved a single, standardized test used uniformly nationwide to disqualify job applicants.[2] Discrimination based on such tests is expressly prohibited by 42 U.S.C. § 12112(b)(6). Here, there was no such employment test. Rather, BNSF utilized a statutorily authorized hiring process to make a conditional offer before seeking medical information about the employee's physical ability to do the job. *See* 42 U.S.C. § 12112(d)(3). Unlike the application of a standardized test, this hiring practice involves personalized and discrete decisions made on a case-by-case basis. Given the individualized nature of the background screen and the medical officer's consideration and assessment of unique medical records, the data sought by the EEOC would not provide comparative statistics or a useful context for Wells' charge of discrimination.

Much of the EEOC's other case authority involves charges of discrimination that included class-wide or pattern-and-practice allegations, or multiple charges alleging the same type of discrimination. *See, e.g., EEOC v. Technocrest Sys., Inc.*, 448 F.3d 1035, 1037 (8th Cir. 2006) (where six charging parties as a class alleged national origin discrimination); *EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 984 (D. Minn. 2010) (where the amended charge contained an allegation of class-wide discrimination); *EEOC v. United Parcel Serv., Inc.,* 587 F.3d 136, 139-40 (2d Cir. 2009) (where the charge alleged a pattern or practice of religious discrimination). As such, these cases are not applicable to the present case.

---

[2]   A case from this District, *EEOC v. United Parcel Service*, Civ. No. 06-mc-42 (MJD/SRN), 2006 WL 3712941 (D. Minn. Sept. 1, 2006), involved an analogous nationwide blanket policy barring individuals with insulin-dependent diabetes from being hired as mechanics. *Id.* at *1. No such blanket policy has been alleged here.

At the May 2, 2011 hearing, the EEOC mentioned a case decided by the Seventh Circuit after briefing in this matter had concluded, *EEOC v. Konica Minolta Business Solutions U.S.A., Inc.*, --F.3d--, 2011 WL 1602064 (7th Cir. Apr. 29, 2011). In that case, the EEOC issued a subpoena requesting hiring records of sales personnel at four of the employer's Chicago-area facilities, based on its suspicion that the employer might have engaged in discriminatory hiring practices. *Id.* at *1. Upholding the enforcement of the subpoena, the court noted that the charging party had alleged both an individual occurrence of race discrimination, as well as a pattern of discrimination. *Id.* at *3.

*Konica* is unlike the present case in several notable respects. First, the scope of the *Konica* subpoena was limited to sales personnel, not all job applicants, and to only four facilities in one metropolitan area. These distinctions underscore the overbreadth of the subpoena under review, which is not limited by location or job type. Second, the charge under investigation in *Konica* alleged both individual discrimination and a pattern of discrimination, whereas Wells' charge alleges only an instance of individual discrimination. Consequently, *Konica* does not support the EEOC's request for nationwide data on all job applicants who were deemed not medically qualified for a position.

In sum, the Court finds that the subpoena at issue is overbroad. While it seeks some relevant information, it also requests data that is not pertinent to the charge under investigation. BNSF has offered to provide the names and medical information for all job applicants nationwide who were not hired as track laborers between January 1, 2007 and April 30, 2010, and the Court finds this to be a proper limitation on the scope of the subpoena. The Court accordingly recommends that the subpoena be enforced to this extent.

## III.     RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the EEOC's Application for Order to Show Cause Why a Subpoena Should Not Be Enforced (Doc. No. 1) be **GRANTED IN PART** and **DENIED IN PART**. The subpoena should be enforced to the extent that it requests names and medical information for all job applicants nationwide who were not hired as track laborers between January 1, 2007 and April 30, 2010.

Dated: May 16, 2011

                                         *s/ Jeanne J. Graham*
                                         JEANNE J. GRAHAM
                                         United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **May 31, 2011**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.